# EXHIBIT A

E-FILED
9/15/2020 1:12 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370639
Reviewed By: S. Alvarez

Law Office of Dan Hogue
Dan Hogue, SBN 098847
180 South Lake Avenue, Suite 238
Pasadena, California 91101
Telephone No.: (626) 796-0200
Fax No.:      (626) 796-3892
Attorney for Plaintiff, Qin Sanluo

Law Offices of Jeffrey T. Bell
Jeffrey T. Bell (SBN 184876)
11001 Valley Mall Ste 300
El Monte, CA 91731-2620
Telephone: (626) 280-8787
Facsimile: (626) 226-5699
Attorney for Plaintiff, Bin Ma

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| QIN SANLUO, BIN MA;<br><br>  Plaintiff,<br><br>vs.<br><br>PILLSBURY WINTHROP SHAW PITTMAN LLP, DOES 1 through 20.<br><br>  Defendants. | Case No.: 20CV370639<br><br>COMPLAINT FOR BREACH OF FIDUCIARY DUTY - DAMAGES AND DISGORGEMENT |

Plaintiffs Qin Sanluo and Bin Ma declare as follows:

1. Plaintiff Qin Sanluo ("Qin") is an individual who resides in Jiangsu Province, Peoples Republic of China.

2. Plaintiff Bin Ma ("Ma") is an individual who resides in Nanjing, Peoples Republic of China.

3. On or about July 18, 2018, VantagcPoint Venture Partners 2006(Q), L.P. ("VantagePoint") filed its Demand for Arbitration and Statement of Claim against Transport Technology Systems Limited, a Cayman Islands corporation ("TTS"), Ma and Qin

4. With respect to the disputes included in the arbitration, the parties agreed that the

1

COMPLAINT FOR BREACH OF FIDUCIARY DUTY - DAMAGES AND DISGORGEMENT

International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association would preside over the arbitration in Santa Clara County, California, following the rules then in effect of the American Arbitration Association.

5. The Demand for Arbitration seeks monetary damages, including punitive damages, which place the Plaintiffs' finances directly at issue and risk.

6. Defendant, Pillsbury Winthrop Shaw Pittman LLP ("PWSP LLP") is a Limited Liability Partnership engage in the practice of law in the State of California with offices in San Francisco, Sacramento, Silicon Valley, Los Angeles, and San Diego.

7. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint if necessary to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereupon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's losses and damages as herein alleged were proximately caused by the acts and conduct of such fictitiously named defendants.

8. Plaintiffs are informed and believe and based thereon allege that Defendants, and each of them, gave consent to, ratified, and/or authorized the acts alleged herein as to each of the remaining Defendants.

9. In or about August 2018, PWSP LLP, by and through its partners, including Michael Evan Jaffe, David Stute, Julian Zou, and Thomas Shoesmith, undertook the joint representation of TTS, Qin, Ma. Plaintiffs are informed and believe that Thomas Shoesmith and Julian Liu are both members of the California Bar and authorized by the State Bar of California to practice law in California. Plaintiffs are further informed and believe that attorneys Michael Evan Jaffe and David Stute have appeared in the above-described arbitration in Santa Clara, California, and have thereby expressly consented to be bound by all rules and ethical obligations of attorneys practicing in California.

10. Between in or about August 2018 and September 16, 2019, the Plaintiffs employed PWSP LLP as a team of attorneys to represent them in the above referenced multi-party litigation.

11. As described in the Demand for Arbitration:

COMPLAINT FOR BREACH OF FIDUCIARY DUTY - DAMAGES AND DISGORGEMENT

a. TTS was incorporated in the Cayman Islands in 2005 to facilitate foreign investment into businesses located in the People's Republic of China under the "red-chip model," a commonly used structure for foreign investments.

b. TTS had issued five types of shares, to wit, Common, Series A preferred, Series B preferred, Series C preferred, and Series D preferred.

c. TTS also issued various warrants convertible into multiple types of shares by creditors of TTS and its subsidiaries.

d. VantagePoint holds the majority of the preferred shares of TTS

e. The majority of TTS's Common Shares are held by Ma, the founder, chief executive officer, and chairman of the board of directors of TTS.

f. Qin held Series D warrants based on his $30,000,000 loan to a PRC based subsidiary of TTS. Because of his warrant rights, Qin was a director of TTS.

g. In and after 2017, Qin exercised his creditor rights against the debtor subsidiary, and all such rights were fully adjudicated by PRC based courts with express jurisdiction to hear and decide disputes related to Qin's loan.

12. At no time during their agreement for joint representation of plaintiffs, nor since, has PWSP LLP acknowledged the existing conflict of interest existing between TTS, the Plaintiffs, and each other based on their differing histories and contractual rights with TTS, VantagePoint, and each other. Neither has PWSP LLP explained the nature and extent of the conflict nor obtained consent to joint representation despite the existence of the conflict of interest.

13. Despite distinctly different rights and liabilities associated with the dispute, Defendant obtained the plaintiffs' records, attended meetings in which the issues related to the dispute were discussed, jointly and individually counseled and advised the Plaintiffs of the status of the case, and discussed the case with prospective witnesses and experts, including the facts and legal issues involved therein.

14. The Defendant was part of multiple roundtable strategy discussions with other team attorneys regarding the full gamut of issues from pleadings to proof of liability and damages at arbitration.

15. During its tenure as counsel for Plaintiffs, PWSP LLP was paid $470,000 in fees and claims entitlement to far more.

16. On or after September 16, 2019, the Plaintiffs' new counsel, respectively, notified Defendant that the joint representation of their respective clients (the Plaintiffs herein) involved an unresolved conflict of interest, in light of Defendant's joint representation TTS and Plaintiffs in the VP v. TTS.

## FIRST CAUSE OF ACTION

(BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS)

17. The Plaintiffs reallege and incorporate herein as if fully set forth all of the allegations contained in paragraphs 1 through 16 of this complaint.

18. As the Plaintiffs' former counsel, Defendant knew that the Plaintiffs placed a high level of trust, faith, and confidence in the Defendant and its team of attorneys. By agreeing to represent Plaintiff in VP v. TTS, PWSP LLP assumed a legal duty to Plaintiff to act with undivided loyalty and confidentiality.

19. As the Plaintiffs' former counsel of record, PWSP LLP owes the Plaintiffs an ongoing duty of loyalty and confidentiality. Defendant's duty prohibits it, and its team of attorneys, from acting in any way that will injure their former client. This ongoing duty forbade the Defendant, and its team of attorneys, from acquiring and using against either Plaintiff any knowledge or information gained by virtue of the previous attorney-client relationship.

20. By operation of law, PWSP LLP agreed and is required to act with the utmost good faith and trust and to give his undivided loyalty to each Plaintiff, individually.

21. PWSP LLP breached its fiduciary duties of loyalty and confidentiality to each Plaintiff by representing them jointly in defense of the VantagePoint arbitration. Each Plaintiff was entitled to assert defenses and counter-claims that are individual to them individually and in certain circumstances directly contrary to the rights of the other. Finally, the misguided effort to jointly represent these individual Plaintiffs and TTS despite actual knowledge that VantagePoint was the largest preferred shareholder completed an impossible conflict for PWSP LLP and these Plaintiffs.

22. Defendant's conduct constitutes a clear violation of California Rules of Professional

4

COMPLAINT FOR BREACH OF FIDUCIARY DUTY - DAMAGES AND DISGORGEMENT

Responsibility ("CRPC") 3-310(E), which provides, "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

23. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered damages in an amount according to proof at trial, but, in any event, well in excess of $470,000.00.

24. In committing the acts described above, Defendant was guilty of malice, bad faith, high moral culpability, and wanton dishonesty to each Plaintiff. Defendant's conduct was willful and in violation of the Rules of Professional Conduct. Plaintiffs are therefore entitled to punitive damages in an amount based upon proof at the time of trial.

WHEREFORE, Plaintiffs prays for judgment against Defendants, as follows;

1. For compensatory damages in the amount of $470,000.00
2. For punitive damages;
3. For costs of suit; and
4. For such other and further relief as the court deems just and proper.

Dated: September 14, 2020

By: *Dan Hogue*
Dan Hogue, attorney for
Plaintiff Qin Sanluo

By: *Jeff Bell*
Jeffrey T. Bell, attorney for
Plaintiff Bin Man

5

COMPLAINT FOR BREACH OF FIDUCIARY DUTY - DAMAGES AND DISGORGEMENT